```
                                                               FILED
           UNITED STATES DISTRICT COURT
                                                             SEP 24 2015
              DISTRICT OF SOUTH DAKOTA

                  SOUTHERN DIVISION                              CLERK
```
*************************************************************

JAMES LASLEY,                  *    CIV 13-4090
                               *
            Plaintiff,         *
                               *
     -vs-                      *    MEMORANDUM OPINION AND
                               *    ORDER DENYING MOTION
RUNNING SUPPLY, INC.,          *    FOR NEW TRIAL
                               *
            Defendant.         *
                               *

*************************************************************

After a jury trial, Defendant, Running Supply, Inc., obtained a verdict in its favor on Plaintiff's claim of negligence. Plaintiff, James Lasley (Lasley) has filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59.

## BACKGROUND

The evidence at trial showed that, on May 28, 2013, Lasley, a self-employed tractor-trailer driver, picked up a shipment of cattle panels from Powder River Livestock Handling Equipment Company in Provo, Utah, to be delivered to six different locations including the Running Supply store in Huron, South Dakota. When he picked up the load, Lasley was given a diagram of the load, packing slips for each delivery, instructions, and unloading precautions. Lasley testified that he read the unloading precautions. Those precautions indicated that he was responsible for removing his straps that held the load to the flatbed, and the customer was responsible for unloading the cattle panels.

Lasley started with deliveries to Jackson, Wyoming, Billings, Montana, Gillette, Wyoming, and then Pierre, South Dakota. When Lasley drove his truck onto Running's parking lot in Huron, South Dakota on May 31, 2013, he was approached by a single employee, Melvin Brown, driving a forklift. Lasley said he asked Brown where his help was. When Brown responded that he was "it,"

Lasley thought Brown was short-handed because more than one employee was provided to unload the four deliveries made earlier in the week. Brown testified that he always unloaded this type of freight himself. Lasley asked for a tool to cut the bands, and Brown handed him a bolt cutter. Brown testified that when he observed Lasley on the truck cutting bands and assisting in unloading the first set of panels, it appeared Lasley knew what he was doing. Brown removed the first set of panels with the forklift and drove away to unload them into the storage facility in the parking lot. As Brown was backing out to return to Lasley's truck, he saw Lasley on the ground with panels on top of him. Lasley testified that when he cut the black bands that held the set of panels to the load, the panels shifted, fell and knocked him off the truck and onto the parking lot. Brown testified that those bands should only be cut when the forklift is in place. Lasley admitted that the precautions he read included the language: "When popping black bands, be careful that you stand clear of the product and bands, they will spring open and could injure you."

Lasley suffered back and leg injuries as a result of the fall. On August 30, 2013, Lasley commenced this diversity action. Lasley's one count Complaint turns on the alleged negligent omissions of Defendant's employees: 1) failure to provide an adequate number of employees to unload the shipment, 2) failure to supervise the unloading of the shipment, and 3) failure to properly instruct the unloading. (Doc. 1.) Lasley did not identify a physical defect in the condition of the premises that caused his injuries or damages. He never amended the Complaint.

The pretrial conference was held in this case on October 6, 2014. No pretrial motions had been filed and the Court's knowledge of the case was based solely on the information contained in the complaint and the answer. At the pretrial conference, the Court cited *Parker v. Casa Del Rey-Rapid City, Inc.*, 641 N.W.2d 113 (S.D. 2002), for the proposition that Lasley was a business invitee, and the Court asked what standard of care applied. Counsel for Defendant argued that a straight negligence standard applied because Lasley was unloading his own truck when he was injured. Counsel for Lasley did not argue that his was a cause of action for premises liability, but the Court wondered if a higher standard of cared applied because Lasley was a business invitee at the time of his injury.

Prior to trial, Lasley proposed jury instructions on premises liability:

DUTY OWED TO INVITEE
Defendant is liable for the physical harm caused to Lasley if it:
(1) knew or by the exercise of reasonable care would have discovered the condition, and should have realized that it involved an unreasonable risk of harm to Lasley; and
(2) should have expected that Lasley would not have discovered or realized the danger, or would have failed to protect himself against it; and
(3) failed to exercise reasonable care to protect Lasley against the danger; and
(4) that Defendant's breach of such duty or duties were the legal cause of Lasley's injuries.
(Doc. 19, Proposed Jury Instructions by James Lasley, at p. 6.)


DUTY - REASONABLE AND ORDINARY CARE

Reasonable and ordinary care required Defendant to keep its premises safe and warn any invitee, like Lasley, of any concealed, dangerous conditions known to Defendant.
(*Id* at 7.)


LANDOWNER LIABILITY - DUTY TO INVITEE - OPEN AND OBVIOUS CONDITIONS

Defendant is not liable to Lasley for physical harm caused to Lasley by an activity or condition on its land whose danger is known or obvious to Lasley.

The word "known" means that Lasley both knew of the existence of the dangerous condition, and appreciated the probability and gravity of the danger posed by that condition.

The word "obvious" means that the condition and the risk would be recognized by a reasonable person in Lasley's position, regardless of whether Lasley subjectively recognized the danger.

However, if Defendant had reason to believe that the condition would harm Lasley despite its obviousness, Defendant had a duty to warn Lasley regarding the condition or to take other reasonable steps to protect Lasley.
(*Id*. at 8.)

In contrast, Defendant's proposed jury instructions contained general negligence principles. (Doc. 16.) Lasley submitted a memorandum objecting to general negligence jury instructions, arguing that the accident occurred on Defendant's premises, that Lasley was a business invitee, that Defendant had control over the unloading process and had knowledge of the dangers involved in unloading cattle panels. (Doc. 26.)

Defendant then submitted a brief arguing that this is not a premises liability case because it does not involve a condition on the land. (Doc. 30.) Defendant wrote, "the site where the accident occurred was property owned by the Defendant, but the condition of the property owned by the Defendant had nothing to do with the accident giving rise to the claim. Lasley was not injured by the condition of Running's land, but because he fell off his own truck." (Doc. 30 at p. 5.)

Recognizing that the circumstances of this case were different than the usual South Dakota premises liability case which is predicated on a property possessor's failure to warn or make safe dangerous or defective conditions on property, the Court carefully listened to all of the evidence presented at trial. The Court ultimately determined that Lasley's was not a premises liability case because it was based solely on alleged acts or omissions of Defendant's employees. The Court prepared a set of jury instructions incorporating general negligence principles and gave copies to the lawyers for each party. After the lawyers had time to review the instructions, the Court went through each instruction for objections. No objections were made to the Court's instructions during the settling of instructions. The jury was given the general negligence instructions.

During deliberations, the jury submitted three questions concerning a business's responsibility to individuals harmed on the property and a business's responsibility for the behavior of individuals on its property. (Docs. 36, 37.) Counsel for Lasley asked the Court to respond to the questions with premises liability principles, but that request was denied. The Court was in the process of drafting answers to the questions when the jury indicated that it had reached a verdict. (Doc. 38.) Before receiving the verdict, the Court completed the answers and a supplemental instruction was delivered to the jury:

Question No. 1:
If a customer is harmed/hurt on a business's property, is the business responsible?

The instruction in response from the Court is as follows:

The defendant business, Running Supply, Inc., can be liable to Plaintiff James Lasley if he meets the requirements as set out in the Court's written instructions. The fact alone that James Lasley was hurt while on the property of Running Supply, Inc. does not in and of itself make Running Supply, Inc. liable. The burdens of proof are set out

4

in Instruction No. 13. That instruction and all other instructions must all be considered and followed by the jury.

Question No.2:
How responsible is a business for the behavior of individuals on their property?

The instruction in response from the Court is as follows:

As the Court stated in Instruction No. 11, "Any act or omission of an employee within the scope of his employment is the act or omission of the corporation for which he was then acting." There is no suggestion in this case that any employee of Defendant Running Supply, Inc. was outside the scope of his employment.

Question No.3:
Specifically, an individual allows themselves to walk into harm's way, and is not stopped. Can you site precidence, or is that asking too much?

The instruction in response from the Court is as follows:

Each case has different facts. I give you the law in the Instructions and you apply that law to the facts as the jury sees the facts to be. You have various Instructions on the doctrines of negligence as applied to Defendant Running Supply, Inc. and contributory negligence and assumption of risk as to Plaintiff James Lasley. Who has the burden of proving what is set forth in Instruction 13, but you have to consider all Instructions.

(Doc. 39, Supplemental Instruction No. 1.)

Shortly thereafter, the jury indicated that it had still reached a verdict. (Doc. 40.) The jury found in favor of Defendant, Running Supply. (Doc. 43, Verdict.) Lasley filed this post-trial motion for a new trial.

Lasley raises two arguments in support of his request for a new trial: (1) it was error to instruct the jury on general negligence rather than on premises liability, and (2) the verdict was against the weight of the evidence. For the reasons stated below, the motion for a new trial will be denied.

## DISCUSSION

Federal Rule of Civil Procedure 59 allows a court to grant a new trial to any party on all or some of the issues. A new trial should be granted if the ends of justice so require. *See Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 804 (8th Cir. 1979). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2803 (2d ed. 1995). In considering a motion for new trial "the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has." *Ryan by Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984). In ruling on a motion for new trial "... the ultimate test [is] whether there [has] been a miscarriage of justice." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992).

### 1. General Negligence or Premises Liability Instructions

Lasley argues that the general negligence instructions given to the jury did not accurately set forth the law governing premises liability, and that the instructions were defective because they failed to inform the jury that Defendant had the duty (1) to warn Lasley of a known dangerous condition, (2) to make the premises safe, and (3) to take other reasonable steps to protect Lasley as a business invitee on its premises.

A new trial may be appropriate when a jury has been improperly instructed. *See, e.g., McKay v. WilTel Commc'n Sys., Inc.*, 87 F.3d 970, 976 (8th Cir. 1996). The question is whether the Court's instructions, "taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Gill v. Maciejewski*, 546 F.3d 557, 563 (8th Cir. 2008) (citation omitted). A party is not entitled to any particularly worded jury instruction, *Ryther v. KARE 11*, 108 F.3d 832, 847 (8th Cir. 1997) (per curiam), and the instructions need not be "technically perfect or even a model of clarity," *Gill*, 546 F.3d at 563. Moreover, erroneous jury instructions entitle a party to a new trial only if the error "affected [his] substantial rights." *Id.*; *see*

*also* Fed.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

Defendant first asserts that Lasley did not preserve his objection to the Court's instructions because he did not object while the instructions were being settled.[1] The Court disagrees. Federal Rule of Civil Procedure Rule 51(d)(1)(B) provides that a party may assign as error "a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed.R.Civ.P. 51(d)(1)(B). Lasley argues he was not required to "also properly object" at the settlement conference because he properly requested the premises liability jury instructions by submitting them prior to trial, and the Court rejected his request in a definitive ruling on the record. The Court agrees. Lasley timely submitted proposed jury instructions which included premises liability standards. He also submitted a brief opposing Defendant's general negligence instructions. During the trial, the Court advised the parties that it was considering whether to instruct on premises liability, and at the close of the evidence the Court announced that it would instruct on general negligence. Thus, pursuant to Rule 51(d)(1)(B), Lasley was not required to object to the failure to give the requested instructions at the time of the settlement conference in order to preserve this post-trial challenge. Accordingly, Lasley's claim that the Court erred by instructing on general negligence rather than premises liability is not limited to plain error review.

In his motion for new trial, Lasley argues that premises liability applies for the additional reason that he was injured during a dangerous *activity* on Defendant's property, and he asserts for the first time that "dangerous conditions include *activities* performed upon the premises." (Doc. 48

---

[1] Objections to jury instructions that were not raised at trial are reviewed only for "plain error," which is "narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Ryther v. KARE 11*, 108 F.3d at 847 (quoting *Des Moines Bd. of Water Works Trustees v. Alvord*, 706 F.2d 820, 824 (8th Cir. 1983)); *see also* Fed.R.Civ.P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.").

7

at 10.) Notably, none of the South Dakota Supreme Court cases Lasley cites in support of this proposition involve activities. Instead, those cases quote either a jury instruction[2] or the Restatement which include the word "activity" or "activities," but the facts of the cases actually involve conditions on or of the premises. It appears that the South Dakota Supreme Court has not had occasion to address whether premises liability encompasses not only conditions of land, but also activities conducted on the premises.

Lasley cites an Eighth Circuit case decided under Nebraska law, *Burry v. Eustis Plumbing & Heating, Inc.*, 243 F.3d 432 (8th Cir. 2001), where the district court, *sua sponte* and over the plaintiff's objection, decided to instruct on premises liability instead of general negligence. The Eighth Circuit affirmed, noting that "the Nebraska Supreme Court made clear that premises liability encompasses not only condition of the land, but also activities conducted on the premises." *Id.* at 433. The Nebraska Supreme Court case cited by the Eighth Circuit in *Burry* is *Haag v. Bongers*, 589 N.W.2d 318 (Neb. 1999). There, Haag was injured while attending an estate auction. The auction was conducted on property owned by the estate by auctioneers hired by the estate. Antique vehicles offered for sale were towed into a building where the bidding and sale occurred. Haag was struck and injured when a hitch ball came loose from the drawbar of a tractor which was towing one of the vehicles. The trial court submitted the issue of the estate's negligence to the jury on the basis of premises liability. On appeal, the estate argued that this was error because the accident did not result

---

[2]Lasley points out that South Dakota Pattern Jury Instruction 20-90-70 (Landowner Liability - Duty to Invitee - Open and Obvious Conditions), which he proposed in this case, includes the word "activity:"
> In general, an [owner] [possessor] of land is not liable to an invitee for physical harm caused to the invitee by an activity or condition on the land whose danger is known or obvious to the invitee. However, if [the owner] had reason to believe that the condition will harm the invitee despite its obviousness, the [owner] [possessor] has a duty to warn the invitee regarding the condition or to take other reasonable steps to protect the invitee.
> The word "known" means that the invitee both knew of the existence of the dangerous condition, and appreciated the probability and gravity of the danger posed by that condition. The word "obvious" means that the condition and the risk would be recognized by a reasonable person in the invitee's position, regardless of whether the invitee subjectively recognized the danger.

8

from a "condition" of the land. *Id.* at 333. In affirming the verdict in favor of Haag, the Nebraska Supreme Court adopted the principle of premises liability stated in Restatement (Second) of Torts § 341A, which provides:

> A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it.

Accordingly, the Nebraska Supreme Court held that premises liability encompasses activities conducted on the premises. The verdict was upheld because evidence showed that the estate was in possession of the premises on the day of the auction and that the injury arose out of an activity conducted on the premises. *Id.* at 334.

With no South Dakota authority similar to *Haag*, Lasley cites *Kern v. City of Sioux Falls*, 560 N.W.2d 236 (S.D. 1997), in support of his argument that South Dakota premises liability law includes dangerous "activities" on land. The Court in *Kern* held that roller-skating on the bike trail in the city park was use of the land for "recreational purposes" within the meaning of South Dakota's recreational use statute, and thus the city was immune from liability in the lawsuit brought by skaters who tripped and fell on an uneven section of the trail. The South Dakota recreational use statute abrogates some premises liability for landowners who allow people to use their land for outdoor recreational purposes.[3] Because the recreational use statute abrogates common law, the language

---

[3]SDCL § 20-9-13 provides:
Except as provided in § 20-9-16, an owner of land owes no duty of care to keep the land safe for entry or use by others for outdoor recreational purposes or agritourism activities, or to give any warning of a dangerous condition, use, structure, or activity on the owner's land to persons entering for outdoor recreational purposes.

"Recreational purposes" is defined at SDCL § 20-9-12(3):
"Outdoor recreational purposes," includes any of the following activities, or any combination thereof: hunting, fishing, swimming other than in a swimming pool, boating, canoeing, camping, picnicking, hiking, biking, off-road driving, aviation activity, nature study, water skiing, winter sports, snowmobiling, viewing, or enjoying historical, archaeological, scenic, or scientific sites[.]

of the statute suggests that the legislature may have believed premises liability law included a duty to warn of a dangerous activity on land. *See* SDCL § 20-9-13. The South Dakota Supreme Court in *Kern* did not hold, however, that South Dakota premises liability law extends to dangerous activities on the land, and the case did not involve facts or law analogous to those in the present case. *Kern* does not persuade this Court that premises liability applies to the facts of this case.

The Court's own research shows that some courts distinguish between conditions on the premises and activities on the premises that cause harm by characterizing the conditions as "passive negligence" and the activities as "active negligence." It appears this distinction arose because those jurisdictions defined the standard of care owed to licensees in terms of active or affirmative negligence, a lower standard of care than that owed to invitees. *See, e.g., Menard v. Lavoie*, 806 A.2d 1004, 1006 (Vt. 2002) (a licensee is entitled to a duty of care only to prevent "active or affirmative negligence by the landlord").[4] The distinction between "active negligence" for activities on the land and "passive negligence" for conditions on the land led to problems for some courts when determining whether a duty of care was owed by a landowner to a licensee. *See, e.g., Ragnone v. Portland Sch. Dist. No. IJ*, 633 P.2d 1287 (Or. 1981). The plaintiff in *Ragnone* was a licensee on the defendant's school grounds when she was injured by students who were playing games during a class in the gymnasium. *Id.* at 1288. The jury awarded damages to the plaintiff under a general negligence theory. *Id.* at 1288, 1289. The lower court in *Ragnone* found that because the school's negligent failure to supervise students was an act of omission, it constituted passive instead of active negligence and thus the school did not owe a duty of care to the plaintiff/licensee for injuries sustained on the premises. *Id.* at 1289-90. The lower court granted the defendant's motion for judgment notwithstanding the verdict. *Id.* at 1288. In reversing the lower court, the Oregon Supreme Court wrote:

---

[4]In 2014, the Vermont Supreme Court eliminated the traditional common-law distinctions between invitees and licensees, and adopted a standard of reasonable care under the circumstances. *See Demag v. Better Power Equip., Inc.*, 102 A.3d 1101, 1110-1111 (Vt. 2014) (changing common-law rule to hold that landowners owe same duty of care to licensees and invitees alike abrogates holding in *Menard v. Lavoie* that licensees are owed a lower standard of care).

> Stating the duty in terms of active or passive negligence has led to confusion. This case is illustrative. Both the trial court and the Court of Appeals erroneously equated active negligence with commission, passive negligence with omission. The term "active negligence" or "affirmative negligence," as used in our previous decisions, refers to the negligent conduct of activities upon the land, and the term "passive negligence," as used in our previous decisions, refers to hazards arising from the physical condition of the land, the existence of which normally does not create liability in favor of an injured person. "Active negligence" does not equate with commission; "passive negligence" does not equate with omission.

*Id.* at 1290-91. The court concluded that it would be preferable to avoid using the terms, and instead to characterize the duties as arising from conditions of the land or from activities on the land. *Id.* at 1291. The court went on to state that when an injury arises from an activity on the premises as it did in that case, the fact that the plaintiff was standing on land owned by the defendant is "fortuitous" and "largely irrelevant." *Id.* It made no difference whether the plaintiff was an invitee or a licensee because she was lawfully on the premises, and the defendant owed her a standard of reasonable care in the conduct of its activities. *See id.* The court reinstated the verdict in the plaintiff's favor, which was based on allegations of standard negligence (failure to control and supervise students in gym class), and not on premises liability. *See id.*

Other courts have moved away from the traditional status-based premises liability rules for activities on the premises and have instead recognized a duty of reasonable care to everyone for activities. For example, in Missouri the duty owed by a property owner is still governed by the status of the entrant on the premises with regard to conditions of the land; but as to activities conducted on the premises the possessor owes a duty of reasonable care to invitees, licensees and trespassers alike. *See Davis v. Jackson*, 604 S.W.2d 610, 612 (Mo. App. 1980); *Cunningham v. Hayes*, 463 S.W.2d 555, 559-60 (Mo. App. 1971). Similarly, the Kansas Supreme Court adopted a rule that land possessors owe a duty of reasonable care to invitees and licensees alike for the possessor's activities.[5] *See Bowers v. Ottenad*, 729 P.2d 1103 (Kan. 1986).

---

[5]In 1994 the Kansas Supreme Court abolished the licensee-invitee distinction, holding that landowners owe a duty of reasonable care under the circumstances to licensees and invitees in premises liability cases. *See Jones v. Hansen*, 867 P.2d 303, 310 (1994).

11

Alabama courts have done the same. *See Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049 (Ala. 2003). In determining whether premises liability or general negligence applied when the plaintiff, an invitee at the state fair, was injured on a mechanical bull ride, the Alabama Supreme Court in *Lilya* wrote, "The key to this question is whether the injury was caused by some affirmative conduct of the landowner or by a condition of the premises." *Id.* at 1053. In *Lilya*, the court determined that "it was the allegedly dangerous condition created by the inherent risks of the mechanical bull ride itself" and not anyone's conduct that caused the plaintiff's injury. Thus, premises liability applied in that case. *Id.* at 1054. Following *Lilya*, Alabama courts confronting the question whether a landowner's duty is rooted in general negligence or premises liability look not to the plaintiff's status as invitee, licensee or trespasser, but to whether the injury was caused by the defendant's affirmative conduct or by a dangerous condition on the premises. Where the injury on a defendant's property was caused by acts of the defendant or its employees, traditional negligence principles apply. *See Powell v. Piggly Wiggly Alabama Distributing Co., Inc.*, 60 So.3d 921, 924 (Ala.Civ.App. 2010) (alleged negligent actions of defendant's employee in operating forklift ultimately caused plaintiff's injury rather than any dangerous condition existing on the property); *Shelley v. White*, 782 F.Supp.2d 1295, 1296 (M.D.Ala. 2010) ("There is no question that the injury in this case was caused by the operator's movement of the truck and trailer, not by a condition of the truck or trailer itself. Therefore, applying the analysis set out by the Alabama Supreme Court, the duty to Shelley comes from traditional principles of negligence, and not premises liability, so his status at the time of the incident is not determinative.").

Similarly, the Florida Supreme Court held that when an injury to an invitee is caused by activities of the landowner, as distinguished from the conditions of the premises, ordinary negligence is the standard of care. *See Hix v. Billen*, 284 So.2d 209, 210 (Fla. 1973) (landowner started car while plaintiff was pouring gasoline into the carburetor, resulting in a fire injuring plaintiff). As noted by the *Hix* court: "[T]his action really has no relationship to defendant's Premises," and "it merely happened that the car was located there instead of on the curb or in a parking lot or elsewhere." *Id.* Later, in *Maldonado v. Jack M. Berry Grove Corp.*, 351 So.2d 967 (Fla. 1977), the Florida Supreme Court wrote that"[o]nly when liability is predicated upon an alleged defective or

dangerous condition of the premises is the injured person's status relevant." *Id.* at 968. An employee brought their toddler to work and the child was seriously injured when another employee backed over the toddler while working in a vehicle in the defendant's citrus grove. The court held that the standard of ordinary negligence set forth in *Hix* governed the liability of the landowner in *Maldonado* for the injuries sustained by the child due to the actions of the defendant's employee. *Id.*

The reasoning in the decisions discussed above convinces this Court that the better rule is to apply traditional negligence principles in the present case because Lasley's injuries were caused by the actions (or omissions) of Defendant's employees and not by any dangerous condition of Running's property.

Furthermore, the South Dakota Supreme Court has not ruled out abolishing the distinction between trespassers, licensees and invitees for purposes of determining a landowner's duty of care even in cases of premises liability. *See, e.g., Musch v. H-D Electric Coop.*, 460 N.W.2d 149, 156-57 (S.D. 1990) (Miller, J., concurring) ("For all of the reasons set forth in my special writing in *Small v. McKennan Hospital*, 437 N.W.2d 194, 204 (S.D. 1989), I continue to urge that we abolish the distinctions of 'trespasser,' 'licensee' and 'invitee' as the controlling factor in determining the standard of care owed by a land occupier to an entrant."). Urging adoption of a standard of reasonable care under the circumstances in favor of the common-law premises liability scheme, *id.* at 156, Justice Miller was persuaded in part by an article in the South Dakota Law Review. The author of the article noted that courts in other states relied on a statute similar to SDCL § 20-9-1[6] in order to abandon the traditional status distinctions:

> The leading and most persuasive case abrogating the common law status distinctions as determinative of the scope of the duty of care owed by land occupiers to entrants regarding artificial conditions of the premises did so on the basis of state statute and the convincing reasoning that these distinctions have outlived their usefulness as a

---

[6]That statute provides: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." SDCL § 20-9-1.

13

controlling factor in determining the scope of the duty owed. South Dakota also has a statute [SDCL § 20-9-1] which is broader than that which was used in *Rowland* and as broad as the codes and statutes used in other jurisdictions which have abandoned the traditional status distinctions as determinative of the scope of duty owed

Comment, *Premises Liability: A Proposal to Abrogate the Status Distinctions of "Trespasser," "Licensee" and "Invitee" as Determinative of a Land Occupier's Duty of Care Owed to an Entrant*, 33 S.D.L.Rev. 66, 85-86 (1988).

A footnote in a 2008 South Dakota Supreme Court case suggests that a challenge to the status-based premises liability duties might receive a favorable response from the court. *See Andrushchenko v. Silchuk*, 744 N.W.2d 850, 858 n.1 (S.D. 2008). Citing SDCL § 20-9-1, the court noted that the parties had not asked the court to consider if the statute "abrogated the common law classifications and imposes a duty of ordinary care in all situations." *Id.*

If the South Dakota Supreme Court is willing to consider abrogating the common law distinction between invitees, licensees and trespassers and impose a duty of ordinary care in all situations, it is unlikely that the court would extend premises liability principles to cases involving negligent conduct or activities as the North Dakota Supreme Court did in *Haag*.[7] Lasley alleges the negligent acts or omissions of Defendant's employees during the panel unloading process caused his

---

[7]Another case that illustrates the South Dakota Supreme Court's position on the interplay between the duty of care under traditional negligence theories and the status distinctions of trespasser, licensee and invitee is *Harris v. Best Bus. Prods., Inc.*, 651 N.W.2d 875 (S.D. 2002). In *Harris*, an employee of the defendant was delivering copiers to Rapid City from Sioux Falls in the employer's van. His 16-year-old daughter rode along. The tire blew out and the van rolled, killing the employee and seriously injuring his daughter. The daughter sued for general negligence arguing that the company failed to equip the van with safe tires. Defendant moved for summary judgment, arguing it owed no duty of care to the daughter as a trespasser in the van. The court held that whether the daughter was a trespasser in the vehicle was irrelevant, as the employer owed a duty to everyone to provide reasonably safe tires on its vehicles. *Harris*, 651 N.W.2d at 880. Although the plaintiff in *Harris* was not injured on the defendant's premises, she was injured in a van owned by the defendant, and the South Dakota Supreme Court's rationale in *Harris* suggests that, if presented with the facts in the present case, the court would find that Running's duty of care to Lasley does not depend on his status as an invitee, but rather falls under traditional negligence principles.

injuries rather than any dangerous condition existing on Defendant's property. The accident could have happened anywhere Lasley's truck was parked. The fact that Lasley's truck was parked on land owned by Defendant when he fell is largely irrelevant. For all of these reasons, the Court finds that it was not error to instruct the jury on general negligence instead of premises liability in this case. Because the Court finds that the jury instructions fairly and adequately instructed the jury on the negligence standards applicable in this case, the Court will deny Lasley's motion for a new trial on the ground of erroneous jury instructions.

### 2. Weight of the Evidence

"A new trial is appropriate when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Boesing v. Spiess*, 540 F.3d 886, 890 (8th Cir. 2008) (citation omitted) (internal quotation marks omitted). In determining whether a new trial is warranted, the Court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). However, the "trial judge may not usurp the functions of a jury." *Id.* at 781. "[T]he true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." *Id.* (citation omitted).

The clear weight of the evidence supported the jury's verdict in this case. There was no evidence of a dangerous condition on Defendant's property that caused Lasley's accident, and no evidence that Defendant's employees knew or expected that Lasley would not have realized the danger in cutting the bands or would have failed to protect himself. Thus, the evidence supports a conclusion by the jury that Defendant did not breach a duty to Lasley. Furthermore, there was evidence that Lasley's accident was caused by his own negligence and that he assumed the risk of his injuries. The unloading precautions state that, "When popping black bands, be careful that you stand clear of the product and bands, they will spring open and could injure you." Lasley testified that he had read these instructions and he knew that the product and bands could spring open and

injure him. Yet he stood right next to the panels when he cut the bands. Lasley's testimony indicated that he knew of the existence of the risk of harm, appreciated the nature of the risk, and chose to cut the bands despite the known and appreciated risks.

Sufficient evidence existed on the record which, if accepted by the jury, could sustain the verdict. No miscarriage of justice occurred in this case. Accordingly,

IT IS ORDERED that Plaintiff's Motion for New Trial is denied.

Dated this 25th day of September, 2015.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)       DEPUTY